IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**UNITED STATES OF AMERICA,**

        Plaintiff,

v.                                            No. CR 07-1286 BB

**LESLIE ELLIOTT NAVE,**

        Defendant.

**MEMORANDUM OPINION
AND
ORDER DENYING MOTION TO SUPPRESS**

THIS MATTER is before the Court on Defendant's *Motion to Suppress Evidence* [Doc. 18], and the Court having reviewed the pleadings of the parties and held an evidentiary hearing on August 7, 2007, finds the motion must be Denied.

*Discussion*

Agent Jesus Rosas is employed by the United States Border Patrol. He was observing traffic on Highway 26 near Hatch, New Mexico, from his K-9 unit when he observed a red minivan pass at about 3:00 AM. Agent Rosas thought the van was riding low. This lead him to pull onto the highway and drive behind the van to get a better look. He observed the van had one occupant and Oklahoma tags. He pulled up beside the van and shined his Stinger high beam light inside. The Agent testified that based on what he saw, he could not determine if there was more than one occupant in

the van.  Agent Rosas stated that he saw clothing lying on the seats in the van which led him to believe that there were other occupants ducking to hide.  The Court finds the photos of the black duffle bags covered with various items of clothing and bags (Exhs. 3, 4 , 6, 7, 8) could certainly give that impression from a distance at night.

Agent Rosas stopped the van to conduct an immigration inspection based on the following factors:  (1) it was 3:00 AM; (2) the minivan was traveling on Highway 26, a rural route commonly used to illegally transport people and substances north from the border; (3) minivans are often used for smuggling; (4) the van had tinted windows; and (4) there appeared to be bodies hiding on the floor and seats.  This is sufficient basis to support an investigatory stop less than sixty miles from the Mexican border.  *United States v. Lopez-Martinez*, 25 F.3d 1481, 1484 (10th Cir. 1994); *see also United States v. Arvizu*, 534 U.S. 266 (2002).

Agent Rosas testified that he approached the van on foot and shined his flashlight inside, but he realized what he mistook for people were black duffle bags, and at this point changed his focus from suspicion of illegal aliens to suspicion of contraband smuggling.  As soon as Defendant rolled down the window, Agent Rosas recognized a very strong odor of raw marijuana.  At this point the Agent had sufficient legal basis to run his dog around the outside of Defendant's vehicle, even without consent.  *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 1995); *United States v. Morin*, 949 F.2d

**297, 300 (10th Cir. 1991). Once the dog alerted, of course, Agent Rosas had probable cause for the arrest. *United States v. Engles*, 481 F.3d 1243, 1245 (10th Cir. 2007).**

**The Court rejects Defendant's argument that Agent Rosas should have terminated the stop once he realized the duffle bags were not crouching people but likely narcotics transport, before even talking to Defendant.[1] *United States v. McSwain*, 29 F.3d 558, 561 (10th Cir. 1994).**

---

[1] The Agent's focus from aliens to narcotics was simultaneous:

A.  When I walked up to the vehicle and I initially shined my light into the very rear cargo area, they looked very square in appearance. Once I was actually able to judge it, I could tell they were very square in appearance.

Q.  Did you linger very long at the rear of the vehicle shining your light? How long did it take your flashlight inspection between when you first shined your light at it and when you reached the driver's window?

A.  Not too long. I mean, I shined my light, I saw what I saw, and moved on to the next seat. I shined my light again. Pretty much as I continued walking, I kept shining my light into the whole interior of the vehicle.

Q.  Based on your prior experience with the Border Patrol, what did you believe these bags contained?

A.  I believe they contained contraband, some type of narcotic.

* * *

Q.  As you approached the driver's window, what did you do?

A.  As I walked up almost to his windows, he rolled down the window. I immediately got a very strong scent of what I would call raw marijuana; in other words, not smoked, if you will, not burned.

Tr. 23-25.

**O R D E R**

**For the above stated reasons, Defendant's *Motion* is DENIED.**

**SO ORDERED this 28th day of August, 2007.**

**BRUCE D. BLACK**
**United States District Judge**